BAILEY ET AL., APPELLANTS, *v.* REITHMILLER ET AL., APPELLEES.

(No. 88-P-2023 — Decided April 17, 1989.)

*Richard C. Lombardi,* for appellants.

*Edward M. Ryder, Jr.,* for appellees.

CHRISTLEY, P.J. This is an accelerated calendar case.

On July 22, 1985, appellant, Michael P. Bailey, filed suit against appellee, Roy Reithmiller, in the Portage County Court of Common Pleas for injuries that resulted from an automobile accident. Bailey had underinsured/uninsured motorist coverage with the Cincinnati Insurance Company (also an appellant herein) and Reithmiller was insured by Reliable Insurance Company.

Sometime thereafter, Reliable tendered the limits of Reithmiller's policy to Bailey, *i.e.,* $12,500. During this time, Bailey made a claim with Cincinnati pursuant to his underinsured/uninsured coverage. Cincinnati settled with Bailey for the sum of $30,000 and accepted an assignment of Bailey's right to Reliable's limits of $12,500 and a subrogation of Bailey's right to proceed against Reithmiller for the balance of the $30,000, *i.e.,* $17,500.

On April 23, 1986, Cincinnati filed a motion to intervene in the case as a subrogee. This motion was granted on April 23, 1986. Before the case could go to trial, Reliable was declared insolvent and the case was stayed. Reliable was first placed under a rehabilitation order, then a liquidation order. The proceedings were further stayed on February 29, 1988 and on March 11, 1988, pursuant to R.C. 3955.19, which provides for a ninety-day stay to permit the Ohio Insurance Guaranty Association to prepare a defense.

On August 12, 1988, Reithmiller filed a motion for summary judgment

alleging that Cincinnati's claim was prohibited by R.C. 3955.01(B)(2) of the Ohio Insurance Guaranty Association Act. On August 30, 1988, appellants filed a brief contra.

On October 11, 1988, the court granted Reithmiller's motion for summary judgment and judgment was entered accordingly on October 20, 1988. The court held that R.C. 3955.01 prohibits insurers from collecting from the insured of an insolvent insurer, through subrogation, any amount it has paid as a claim.

On November 9, 1988, appellants timely filed a notice of appeal.

Appellants assign the following as error:

"The Trial Court erred to the prejudice of Plaintiff Appellant in granting the Defendant's [sic] Motion for Summary Judgment."

This assignment is well-taken.

It appears that this is a case of first impression in Ohio.

The Ohio Insurance Guaranty Act, R.C. Chapter 3955, became effective September 4, 1970. R.C. 3955.03 provides:

"The purposes of sections 3955.01 to 3955.20, inclusive, of the Revised Code *are to provide a mechanism for the payment of covered claims* under certain insurance policies, avoid excessive delay in payment and financial loss to claimants or policyholders because of the insolvency of an insurer, assist in the detection and prevention of insurer insolvencies, and provide an association to assess the cost of such protection among insurers." (Emphasis added.)

In support of their respective positions, the parties refer to R.C. 3955.01, which provides in pertinent part:

"As used in sections 3955.01 to 3955.20 of the Revised Code:

"* * *

"(B) 'Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.20 of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer on or after the effective date of this act and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state.

" 'Covered claim' does not include any amount:

"(1) In excess of three hundred thousand dollars on any claim:

"(2) *Due any reinsurer, insurer, insurance pool, or underwriting association through subrogation; provided, that when such reinsurer, insurer, insurance pool, or underwriting association has paid a claim and thereby becomes subrogated to the amount of that claim, such subrogated claim may be asserted only against the receiver of the insolvent insurer and in no event against the insured of the insolvent insurer.*" (Emphasis added.)

It is to be noted that even if Reliable had not become insolvent, $17,500 would not have been covered by appellee's policy with Reliable since this amount exceeded appellee's policy limit of $12,500.

However, although not cited by the parties, R.C. 3937.18(E), which deals with uninsured/underinsured motorist coverage, also applies to this case and should be read *in pari materia* with R.C. 3955.01. R.C. 3937.18(E) provides:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person

against any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner. *No insurer shall attempt to recover any amount against the insured of an insurer which is or becomes the subject of insolvency proceedings, to the extent of his rights against such insurer which such insured assigns to the paying insurer.*" (Emphasis added.)

Under the plain meaning and strict construction rules, an insurer is only prohibited from attempting to recover against an insured *to the extent of the insured's rights* against his insolvent insurer. In this case, the extent of appellee's rights against Reliable was $12,500. Therefore, appellants are not prohibited from going after appellee for $17,500 ($30,000 less $12,500). To hold otherwise would create an incongruous situation wherein a tortfeasor would be in a better position if his insurer became insolvent. This would afford a tortfeasor protection beyond the limits for which he had bargained. The purpose of R.C. Chapter 3955 is to afford an insured protection against an insolvent insurer and is not to provide protection against claims beyond the limits of a tortfeasor's policy.

Therefore, as a matter of law, the trial judge should not have granted appellees' motion for summary judgment.

The judgment of the lower court is reversed and the cause is remanded for further action.

*Judgment reversed and cause remanded.*

MAHONEY and FORD, JJ., concur.